**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SAEED SOLEIMANSAYAH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2221-SLP** |
| | ) | |
| **WARDEN, DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Saeed Soleimansayah, a noncitizen[1] and Iranian national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). Chief United States District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 4. The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court grant the Petition for habeas relief under 28 U.S.C. § 2241 and order Petitioner's release from ICE custody subject to an appropriate Order of Supervision ("OOS").

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. **Background**

Petitioner, a citizen of Iran, entered the United States on September 7, 2024, without inspection or admission and was taken into immigration custody on the same day. Pet. at 7; Doc. 10-1 at 3 (Dougherty Decl.).[2] ICE later placed him into removal proceedings before the Immigration Court. Doc. 10-1 at 3. On November 20, 2024, ICE paroled Petitioner into the United States for a period of one year. *Id.* at 4; Doc. 10-3 at 2 (Interim Notice Authorizing Parole); Pet. at 7.

On March 10, 2025, ICE issued to Petitioner a Notice to Appear under 8 U.S.C. § 1229a and charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone not in possession of valid, unexpired travel documents for entry. Doc. 10-2 at 2, 5 (Notice to Appear). The next day, he applied for asylum and withholding of removal under the Convention against Torture. Pet. at 7. On November 24, 2025, ICE took Petitioner into custody when he visited ICE's Dallas field office to update his address. Pet. at 2-3, 7; Reply at 5; Doc. 10-1 at 4; Doc. 10-4 at 2 (Warrant for Arrest of Alien); *id.* at 4-5 (ICE Encounter Summary). ICE's encounter summary indicates he was charged with entering the United States without inspection under § 1182(a)(6)(A)(i). Doc. 10-4 at 5.

On February 19, 2026, an Immigration Judge ("IJ") found Petitioner inadmissible and ordered him removed to Iran. Pet. at 2, 7; Doc. 10-1 at 4; Doc. 13-1 at 2, 4 (Order of IJ); *see* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last visited

---

[2] Citations to all filings use the CM/ECF page numbers in the documents' headers.

Oct. 20, 2026).[3] The IJ did not include an alternative removal location. Doc. 13-1 at 4 (leaving un-checked the box for "In the alternative, [Petitioner] was ordered removed to"). The IJ also denied Petitioner's asylum application and his requests for withholding of removal. *Id.* at 2. Petitioner waived appeal of the IJ's decision. *Id.* at 5.

Petitioner's passport expired on July 11, 2026. Reply at 5. ICE requested travel documents for him from the Interests Section of Iran on July 21, 2026. Doc. 10-1 at 4. The record does not indicate whether Iranian officials responded to this request.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. The undersigned presumes he remains detained there, despite no longer appearing on ICE's Online Detainee Locator System. *See* Doc. 6 at 2 (requiring Respondents to "file written notice at least forty-eight hours before removing, transferring, relocating, or otherwise moving Petitioner").

## II. <u>Petitioner's Claims</u>

Petitioner asserts three counts in his Petition.

- **Count I: Violation of Due Process.** Petitioner alleges his arrest and detention are unlawful because he previously was paroled and there was "no reason to re-detain [him]." Pet. at 3. He also alleges he "was provided no advanced notice, explanation, or an opportunity to contest [his] detention in any form." *Id.* (citation modified). Petitioner argues his continued detention is arbitrary and violates his due process rights and ICE regulations. *Id.* He also alleges the Government "determined [he] was neither a security risk nor a risk of absconding" when it

[3] The IJ found Petitioner "inadmissible under [8 U.S.C. § 1182(a)(6)(A)(i)] and/or [§ 1182(a)(7)(A)(i)(I)]." Doc. 13-1 at 2. These statutes are identified as the basis for his removal in the ICE encounter summary, Doc. 10-4 at 5, and Notice to Appear, Doc. 10-2 at 5, respectively. Whether removal was ordered under either or both statutes is not dispositive of the habeas challenge.

paroled him in 2024 and "there is no evidence" of "a change in that assessment." *Id.* at 4.

- **Count II: Violation of Due Process.** Petitioner alleges his due process rights were violated based on the principles of *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at 5-6. He also alleges "Respondents have not taken any concrete steps to remove [him] to Iran" despite "having had more than 6 months" to do so. *Id.* at 5 (citation modified). He alleges his detention has lasted more than nine months. *Id.* at 6.

- **Count III: Violation of Due Process**. Petitioner alleges his due process rights were violated when he "was seized without a warrant, without any showing of a flight risk, while lawfully checking into ICE as instructed, despite holding [an order for] release on self recognizance, employment authorization, and valid identification." *Id.* (citation modified). He alleges he is "confined to a cell nearly twenty-four hours a day" "without access to sunlight or outdoor recreation," which is punitive. *Id.*

Petitioner seeks "immediate release from ICE custody." *Id.* at 7 (citation modified).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Petitioner's continued detention violates his Fifth Amendment due process rights under *Zadvydas*.

Petitioner has a final order of removal, meaning his detention is governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."

*Id.* § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* The removal period begins on the latest of: (1) the date the order of removal becomes administratively final, (2) the date of the court's final order when an order of removal is judicially reviewed, or (3) the date the noncitizen is released from detention or confinement, unless the noncitizen is confined under immigration processes. *Id.* § 1231(a)(1)(B). During the removal period, noncitizens are subject to mandatory detention. *Id.* § 1231(a)(2)(A).

Removal of a noncitizen is not always completed during the removal period. And the end of the removal period does not automatically trigger release. *See* 8 U.S.C. § 1231(a)(6) (allowing post-removal-period detention of, among others, noncitizens who are "inadmissible under section 1182" or "removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)"); *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). The detention of a noncitizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months. *See Zadvydas*, 533 U.S. at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Ordinarily, "if the alien does not leave or is not removed within the removal period," he may be released "subject to supervision." 8 U.S.C. § 1231(a)(3) (citation modified).

As to the six-month period, courts have recognized *Zadvydas* only "adopt[ed] a presumption—not a conclusive bar to adjudication of whether continued detention is

authorized that lifts only after six months have elapsed." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025); *accord Roble v. Pontesso,* 90 F. App'x 334, 336 (10th Cir. 2004) (acknowledging a "rebuttable presumption" in *Zadvydas*). Indeed, after *Zadvydas*, the Supreme Court rejected an argument by the Government that *Zadvydas* "authorizes detention until it approaches constitutional limits" and instead interpreted § 1231(a)(6) "to authorize detention only for a period consistent with the purpose of effectuating removal." *Clark v. Martinez*, 543 U.S. 371, 384 (2005); *see also id.* at 387 (O'Connor, J., concurring) (indicating "the 6-month presumption" "in *Zadvydas*, is just that—a presumption" (citation modified)).

Therefore, to obtain habeas relief, a petitioner has the initial burden (1) to show his post-order-of-removal detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). If Petitioner meets his initial burden, Respondents "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

**1. At least six months have passed since the order of removal became administratively final.**

The IJ issued the order of removal on February 19, 2026. Doc. 13-1 at 2. Because Petitioner waived appeal, the order of removal was administratively final the same day. *See* 8 C.F.R. § 1003.39 (explaining "the decision of the [IJ] becomes final upon waiver of

appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first."); *Muradyan v. Warden*, No. 26-CV-63, 2026 WL 184206, at *2 (S.D. Cal. Jan. 23, 2026) ("Petitioner was ordered removed . . . and because he waived his right to appeal, his order of removal became administratively final the same day." (citation omitted)). Respondents agree regarding when the six-month *Zadvydas* period began. Resp. at 10.

The six-month presumption period lasted until August 19, 2026. The Petition was mailed on August 20, 2026, and filed by the Clerk of Court the next day. Pet. at 1; Doc. 1-1 at 1 (postmark). Currently, Petitioner has been detained eight months since the order of removal became administratively final.[4] As such, detention is no longer presumptively reasonable. *See Zadvydas*, 533 U.S. at 701. Petitioner satisfies the first part of his *Zadvydas* burden.

**2. Petitioner has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.**

To satisfy the second part of his burden under *Zadvydas*, a petitioner "must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal" using "evidence beyond speculation and conjecture." *Dusabe v.*

---

[4] The undersigned analyzes Petitioner's current circumstances. *See Lee v. Crawford*, No. 25CV535, 2026 WL 745263, at *4 (E.D. Va. Feb. 27, 2026) (R&R) ("Federal courts routinely consider post-filing developments in habeas proceedings challenging immigration detention."), *adopted*, 2026 WL 738591 (E.D. Va. Mar. 16, 2026); *Sani v. Figueroa*, No. CIV-26-970-JD, 2026 WL 2533037, at *8 (W.D. Okla. Aug. 27, 2026) (R&R) (applying *Lee* when the six-month *Zadvydas* period expired after the Petition was filed but before judgment), *adopted*, Doc. No. 35 (W.D. Okla. Oct. 15, 2026). Even if the Court finds the passage of time is insufficient to satisfy the first part of the *Zadvydas* analysis, Petitioner has rebutted the presumption of reasonableness for the reasons below.

*Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024) (R&R) (citation modified), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1267-68 (W.D. Okla. 2026) (confirming Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal" (citation modified)). Courts also consider "whether the mere passage of time is sufficient, whether the petitioner's case fits within certain defined circumstances, or whether the petitioner is similarly situated to the two petitioners in *Zadvydas*." *Khaliq*, 828 F. Supp. 3d at 1267-68 (citation modified). A petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable."[5] *Zadvydas*, 533 U.S. at 702. Rather, a petitioner must only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

The undersigned finds Petitioner has met his initial burden under *Zadvydas*. The United States and Iran are in an armed conflict, and diplomatic relations are suspended. *See* U.S. Department of State, Travel Advisory – Islamic Republic of Iran, *at* https://travel.state.gov/en/international-travel/travel-advisories/iran.html (last visited Oct. 20, 2026) ("The U.S. government does not have diplomatic or consular relations with the

[5] Respondents argue against habeas relief unless Petitioner shows they are "wholly unwilling to remove him or [they are] incapable of doing so due to seemingly insurmountable barriers." Resp. at 2. While the latter half of this proposed standard is somewhat consistent with precedent in this District, the former half is incompatible with *Zadvydas*. *See* 533 U.S. at 702 (explaining that requiring "an alien seeking release to show the absence of *any* prospect of removal . . . demands more than [a] reading of [8 U.S.C. § 1231] can bear").

Islamic Republic of Iran."). Petitioner argues "ICE has indicated it does not currently have any concrete plans for [his] removal" and "Iran is not taking back any of its citizens." Reply at 3-4. Respondents do not state otherwise. Instead, they point to a single inquiry made to Iran in more than eight months—a travel document request for Petitioner sent to the Interests Section of Iran, in Washington, DC, on July 21, 2026. Doc. 10-1 at 4-5. Respondents do not affirmatively identify an anticipated timeline or plan for Petitioner's removal to Iran or to a third country. Further, his passport expired on July 11, 2026, so no known travel documents allow his removal to Iran or a third country. Reply at 5.

Judges in this District, including this Court, have reached similar conclusions regarding Iranian citizens. *See Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *5 (W.D. Okla. June 24, 2026) (ordering release when "the record lack[ed] any evidence to show that removal[s] . . . to Iran . . . ha[d] been successful in the last three months" and recognizing the impact of the "armed conflict" between "the United States and Iran" on the likelihood of removal when a petitioner had been detained for 23 months (citation modified)); *Sani v. Figueroa*, No. CIV-26-970-JD, 2026 WL 2533037, at *9 (W.D. Okla. Aug. 27, 2026) (R&R) (recommending release under *Zadvydas* when travel documents were denied by Iran because "the United States and Iran [were] at war" and the Government "concede[d] that as of May 21, 2026, all removals to Iran [were] paused" (citation modified)), *adopted*, Doc. 35 (W.D. Okla. Oct. 15, 2026); *Alizadeh v. Mullin*, No. CIV-26-1316-HE, 2026 WL 2280713, at *3 (W.D. Okla. Aug. 7, 2026) (R&R) (recommending release of an Iranian citizen when the Government had "neither obtained travel documents nor identified a third country nor any communications with a third

country" and there was "no showing Petitioner ha[d] a passport for a third country"), *adopted*, 2026 WL 2388908, (W.D. Okla. Aug. 17, 2026). Judges in other Districts have agreed. *See Sani*, 2026 WL 2533037, at *11 (collecting cases).

Respondents argue Petitioner does not carry his burden because there is no "evidence that Iran is outright refusing to issue travel documents to effectuate his removal." Resp. at 8. The undersigned is not convinced by this argument, at least within the circumstances of this matter. In the eight months since Petitioner was ordered removed, Respondents only sought travel documents from Iran once, Doc. 10-1 at 4, and they waited more than five months to make that request. Nor have Respondents provided any update in the record as to the travel document request made to Iran three months ago.

"It is not the Petitioner's fault if there are no ICE activities or documents to reference or file because ICE has not made any meaningful progress" toward his removal. *Hanifi v. Figueroa*, No. CIV-26-1229-D, 2026 WL 2620554, at *5 (W.D. Okla. Sept. 4, 2026) (R&R) (citation modified). In a different situation, the lack of another country's outright refusal to issue travel documents might undercut a petitioner's argument that there is no significant likelihood of removal in the reasonably foreseeable future. But not here.[6] *Accord Nfumu v. Grant*, No. CIV-25-1574-J, 2026 WL 637618, at *1 (W.D. Okla. Mar. 6,

[6] Respondents rely on *Knwanga v. Maurer*, No. 06 CV 262, 2006 WL 2475261 (D. Colo. Aug. 24, 2006). Resp. at 8 n.14. There, the Government "contend[ed it was] prepared to remove [the petitioner] shortly after his [immigration proceedings ended], but that his filing of the [habeas] Petition caused [it] to delay the execution of that removal." *Knwanga*, 2006 WL 2475261, at *1. Respondents make no such contention here. Also, the *Knwanga* removal was to be to Uganda. *Id.* The United States and Uganda were not in conflict then, as are the United States and Iran currently.

2026) (ordering release when removal was withheld to the petitioner's home country, three countries had denied requests for third-country removal, two countries had not responded to third-country removal requests, and there was no evidence a final country "would actually accept Petitioner" when ICE stated it was "coordinating efforts" for a third-country removal); *Ahmadi v. Diamondback Corr. Facility*, No. CIV-26-1276-R, 2026 WL 2204432, at *1-2, 6 (W.D. Okla. July 16, 2026) (R&R) (recommending release when papers to remove the petitioner to Afghanistan had not been obtained after a still-pending request was made via an intermediary, multiple "status checks" were issued by the Government, and the petitioner had been placed on a third-country removal list), *adopted*, 2026 WL 2203207, at *1 (W.D. Okla. July 30, 2026).

Petitioner's lack of "evidence" showing his "his removal to a third country" may be "impede[d]," Resp. at 11, does not prevent him from satisfying his burden. Initial actions for eventual third-country removal are taken by Respondents, not Petitioner. While ICE Officer Dougherty states he is "not aware of any facts that would currently preclude [Petitioner]'s removal to a third country," Respondents do not identify a suggested third country for removal or identify any step taken to initiate the third-country-removal process. Doc. 10-1 at 5. Respondents are "still waiting on travel documents from Iran," and if removal to Iran is "impractical, inadvisable, or impossible," "immigration officials could *then* begin the process to remove the noncitizen to a third country." Resp. at 13 (citation modified). Thus, it is unclear how Petitioner can "demonstrate[e] the existence of either institutional barriers to []patriation or obstacles particular to his removal" to a third country before Respondents identify a potential third country for possible removal. *Id.* at 11

(citation modified). Respondents do not show Petitioner fails to meet his burden. *See Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025) (rejecting the Government's argument that third-country removal was likely when it "ha[d] not identified any countries with which any level of progress had been made toward obtaining the country's acceptance of Petitioner").

The undersigned concludes Petitioner has established good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701-02. The Court should find he satisfied his initial burden.

**3. Respondents have not met their burden.**

Having concluded Petitioner established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. Respondents do not do so. Respondents functionally repeat the same claims made when arguing against Petitioner meeting his burden. *Compare* Resp. at 10-12, *with id.* at 12-14. They also rely on ICE Officer Dougherty's declaration, Doc. 10-1. But it is insufficient to meet Respondents' burden.

Mr. Dougherty's declaration includes a typed signature block below a blank line without a signature. Doc. 10-1 at 5. The undersigned assumes without deciding the declaration is admissible evidence and may be considered, despite it being unsigned. *See* 28 U.S.C. § 1746 (requiring an unsworn declaration be "subscribed" by the declarant to have "like force and effect" to a "sworn declaration, verification, certificate, statement, oath, or affidavit"); *Sharpe-Miller v. Walmart, Inc.*, No. 2:22-CV-406, 2024 WL 983754,

at *2 (D.N.M. Mar. 7, 2024) ("Unsworn declarations must be signed under the penalty of perjury to have the same effect and force as an affidavit." (citation modified)); *cf. Merritt v. Tex. Farm Bureau*, No. 19-CV-679, 2023 WL 3520236, at *5 (W.D. Tex. May 16, 2023) (finding a declaration with "only a typed signature" and the declarant's name did "not comply with 28 U.S.C. § 1746," but allowing an opportunity to cure by submitting "a hand-written signature").

Mr. Dougherty states there have been prior removals of other Iranian citizens: (a) 12 to Iran and 15 to third countries in Fiscal Year 2024; (b) 106 to Iran and 85 to third countries in Fiscal Year 2025; and (c) 131 to Iran and 45 to third countries in Fiscal Year 2026. Doc. 10-1 at 5. These statistics are not persuasive beyond a surface level. The most recent fiscal year was October 1, 2025, through September 30, 2026. 31 U.S.C. § 1102. The United States launched Operation Epic Fury on February 28, 2026. *See* U.S. Central Command, Operation Epic Fury, *at* https://www.centcom.mil/operations-and-exercises/epic-fury/ (last visited Oct. 20, 2026). The armed conflict with Iran is ongoing.

Accordingly, for the most recent fiscal year, the first five months preceded the current conflict, and seven months were during the current conflict. Respondents do not specify whether any removals from the United States to Iran during Fiscal Year 2026 occurred after the armed conflict began. Based on evidence from the Government in another case in this District, it appears all 131 removals to Iran occurred in the early half of Fiscal Year 2026, with no removals to Iran completed recently. *See* Foncha Decl. at 2-3, *Sani v. Figueroa*, No. CIV-26-970-JD, Doc. 24-1 (W.D. Okla. May 28, 2026) (stating, as of May 22, 2026, that 131 Iranians were removed to Iran and 45 Iranians were removed

to third countries during Fiscal Year 2026—the same numbers for Fiscal Year 2026 included in Mr. Dougherty's August 29, 2026, declaration). The same numbers of removals, reported more than three months apart, strongly imply (i) removals of Iranian citizens are not ongoing and (ii) the removals during Fiscal Year 2026 preceded the current conflict with Iran.[7] Neither the response nor Mr. Dougherty's declaration addresses the armed conflict between the United States and Iran beyond a single sentence acknowledging, but not responding to, Petitioner's argument about it. Doc. 10 at 1.

Finally, even if Respondents showed several removals to Iran after Petitioner's order of removal became final, they do not indicate how prior removals of other persons show a likelihood of *his* removal in the foreseeable future. *See Sani*, 2026 WL 2533037, at *10 (finding similar statistics "insufficient to rebut Petitioner's showing because such figures do not provide evidence of progress made towards removal of Petitioner himself" (citation modified)); *Alizadeh v. Mullin*, No. CIV-26-1316-HE, 2026 WL 2388908, at *1 (W.D. Okla. Aug. 17, 2026) ("The mere fact that respondents have successfully facilitated removals of Iranian citizens to Iran or to a third country is not sufficient to rebut petitioner's showing."). And Respondents do not address why circumstances from early Fiscal Year 2026 should be considered the same as the present when the United States and Iran are now in armed conflict. *Babakhani*, 2026 WL 1822995, at *5.

---

[7] In *Sani*, Officer Foncha also stated: "As of May 21, 2026, all removals to Iran are paused." Foncha Decl. at 2-3, *supra*. While circumstances may have changed since Mr. Foncha's declaration, the undersigned cannot make that determination because Mr. Dougherty's declaration, Doc. 10-1, omits addressing whether removals to Iran are "paused."

Considering all factors, the undersigned finds Respondents failed to rebut Petitioner's showing. The Court should find Petitioner is entitled under *Zadvydas* to habeas relief and immediate release from custody, subject to an appropriate OOS. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)).

**B. The Court should decline to address Petitioner's remaining claims for relief.**

Petitioner alleges he "was provided no . . . opportunity to contest [his] detention," such as through a bond hearing. Pet at 3. If the Court grants habeas relief to him with release, the Court need not decide the merits of other claims based on Petitioner's continued detention.[8] Petitioner also alleges he is "confined to a cell nearly twenty-four hours a day" and "without access to sunlight or outdoor recreation." Pet. at 6. This claim will be moot if the Court grants habeas relief to him with release. Moreover, a detainee's challenge to the conditions of his confinement must be brought through a civil rights action under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). As such, Petitioner's allegations regarding his detention conditions are not properly raised in this Petition.

[8] The Court should similarly decline to address Petitioner's allegation that he "was seized without a warrant." Pet. at 6. Respondents have submitted a copy of the warrant for his arrest, Doc. 10-4 at 2, and Petitioner has not identified any deficiencies in it.

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends the Court **GRANT** the Petition, Doc. 1, for habeas relief and order Petitioner's immediate release from ICE custody, subject to an appropriate OOS. The undersigned further recommends the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **October 27, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **October 30, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 20th day of October, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE